UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,       :
         :
      v.        :    **MEMORANDUM & ORDER**
         :    14-CR-0160 (WFK)
WILLIESTEINA JACOBS,       :
         :
         Defendant.    :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 26, 2016, a jury found Williesteina Atlanta Jacobs ("Defendant") guilty on 21 of 27 counts of Aiding and Assisting in the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2). The Court now sentences her and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 24 months of incarceration, one year of supervised release with special conditions that include payment restitution in the amount of $31,188.00, and payment of a $2,100.00 special assessment.

## BACKGROUND

On March 21, 2014, the United States indicted Defendant on 27 counts of Aiding and Assisting in the Preparation of False Tax Returns. *See* Indictment at 3, ECF No. 1. On July 26, 2016, a jury entered a verdict finding Defendant guilty of Counts 1 through 8, 12 through 21, and 25 through 27; the jury found Defendant not guilty of Counts 9 through 11 and 22 through 24. *See* Jury Verdict at 1, ECF No. 60. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II.  Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on April 26, 1961, in Harlem in New York, New York. Presentence Investigation Report ("PSR") ¶ 46, ECF No. 63. Although Defendant does not know whether her parents were married, her father "was an active parent and supported the family" during his lifetime, but he passed away when Defendant was two years old. *Id.* Thereafter, Defendant, her three siblings, and her two half siblings were raised by their mother, who relied on public assistance, in a low-income household in Brooklyn, New York, and later in Bronx, New York. *Id.* ¶¶ 46, 49. While Defendant "reported [having] a good relationship and frequent contact with all of her siblings," she also explained that, when she was young, they "always" told her "she was not loved" because she did not physically resemble them. *Id.* ¶ 49. Defendant's sole

2

reported father figure was her mother's friend, William Hopkins, who resided in Defendant's home until she was twelve years old and who she described as "very supportive and someone who helped make [her and her family's] lives better." *Id.* ¶ 47. Mr. Hopkins passed away "from blunt head trauma" sustained in 1979. *Id.* Although she had several other romantic relationships, Defendant's mother currently lives alone in the Bronx. *Id.* ¶ 48. She is retired and suffers from diabetes as well as "other unspecified issues," and Defendant reported that she knows of Defendant's conviction, but "doesn't understand it." *Id.*

When she was 16 years old, Defendant entered into a relationship with Steven Strong. *Id.* ¶ 51. Although the two never married because Defendant "did not agree with Mr. Strong's lifestyle," which involved "hanging out in the streets," the two were in an on-and-off relationship for 12 to 14 years. *Id.* Defendant and Mr. Strong have three children: Princess Jacobs, a New York City Police Department officer; Precious Jacobs, a partner at a Chicago law firm; and Steven Strong, Jr., who is currently incarcerated for possessing a weapon. *Id.* While Defendant raised Princess and Precious and Steven resided with his father, Defendant was an active parent and provided financial support. *Id.*

At the age of 20, Defendant began a romantic relationship with Winston Moxey. *Id.* ¶ 52. Defendant and Mr. Moxey also have three children: Passionete Jacobs, who is employed by the Federal Emergency Management Agency, is a member of the United States Army Reserves, and is a plumber; Princeton Jacobs, who is a clerical worker for Defendant's tax preparation business; and Prince Jacobs, Princeton's twin brother, who works as a baggage handler at John F. Kennedy International Airport in Queens, New York. *Id.* Defendant and Mr. Moxey remained in a romantic relationship for 12 years, after which time he moved to Florida, but Mr. Moxey provided no financial support to Defendant, even when their children were young. *Id.*

3

Defendant has a disjointed educational history:  She attended the High School of Fashion Industries in Manhattan, New York, but she dropped out during tenth grade because the other students' behavior—"cutting class[] and destroying property including windows"—made her feel unsafe.  *Id.* ¶ 72.  She reported that she got her GED, but this could not be confirmed in the New York State Education Department's database.  *Id.*  She enrolled in an accounting program at New York City College of Technology in Brooklyn, *id.* ¶ 70, and transferred to a similar program at York College in Queens, which provided her a more convenient commute, but left school after three years to raise her children, *id.* ¶¶ 69–70.  In light of these limitations and in an effort to support her large family financially, Defendant began to perform tax preparation services in 1989.  *Id.* ¶ 73.  In 1992, she registered International Professional Business Services as a domestic business corporation and was its sole owner and operator.  *Id.*  She also performed tax preparation services through the entity Daughters of Jacobs Business Enterprise, Inc.  *Id.* Both businesses are technically dissolved, but Defendant still actively performs tax preparation services.  *Id.*

Beginning in or around 2010, the Internal Revenue Service ("IRS") launched an investigation into Defendant's tax preparation activities.  *Id.* ¶ 8.  The investigation included identifying certain of Defendant's clients and interviewing them about their tax returns and experiences with Defendant.  *Id.* ¶ 13.  It also included an undercover operation in which an IRS agent, posing as a taxpayer, asked Defendant to prepare his 2009 tax return.  *Id.* ¶ 18.  The agent's tax return would have generated a tax liability if prepared correctly, but the tax return Defendant prepared indicated the agent was entitled to a tax refund.  *Id.*  This was because Defendant "falsified nearly $12,000 in deductions that were not based on any information

4

provided to the defendant by the undercover agent," and "fabricated a business loss of approximately $580." *Id.*

Based upon the information obtained from the investigation, the government indicted Defendant. Indictment ¶¶ 1–7. Because Defendant pleaded not guilty on all counts, the case proceeded to trial, where it was determined that the tax loss caused by the falsified returns charged in the Indictment was $31,188.00. *See* PSR ¶¶ 1, 16. Trial testimony from several of Defendant's clients whose returns were not charged in the Indictment established an additional tax loss of $28,008.00. *Id.* ¶ 17. Furthermore, the IRS's investigation established a tax loss from related conduct of $148,670.00. *Id.* ¶ 18. In total, Defendant is responsible for $207,866.00 in tax loss—an amount estimated to be "highly conservative," as it is based on an analysis of about 120 of the at least 3,650 returns Defendant prepared in the relevant time period—that is, the 2007, 2008, and 2009 tax years. *Id.* ¶ 20. Defendant also owes the IRS approximately $13,000.00 in unpaid personal income taxes. Addendum to PSR ¶ 78, ECF No. 69.

Defendant has been at liberty since her arrest and subsequent release on $150,000.00 bond on March 25, 2014. PSR at 1. She has continued to prepare and file tax returns using her daughter Passionete's Electronic Filing Identification Number (Defendant's was revoked due to the 2010 investigation), conduct that is legal and is not precluded by the conditions of her supervised release. *Id.* ¶ 23. Indeed, the supervising Pretrial Services officer has advised that Defendant has complied with all Court-ordered conditions of release. *Id.* ¶ 2. Defendant experiences pain from knee surgery for a torn meniscus sustained in 2013, which she treats with various painkillers, including Ibuprofen. *Id.* ¶ 58. A psychiatric evaluation concluded Defendant has agoraphobia, Adjustment Disorder with depressed mood, and Personality Disorder with obsessive-compulsive features. *Id.* ¶ 64. Nevertheless, prior to and during her release,

Defendant provided financial assistance to Princeton and Prince, and acted as a primary caretaker for Passionete's two children so that Passionete can maintain a job. *Id.* ¶ 52.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter her and others from engaging in similar criminal activity in the future. The Court takes into account the fact that Defendant is not compliant with her personal tax obligations and may or may not have continued to prepare false tax returns even after her conviction. *See* Gov't Sentencing Mem. at 6, ECF No. 71. The Court also takes into account Defendant's need to provide for her children and grandchildren and her compliance with the conditions of her release while out on bond.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was found guilty of 21 counts of Aiding and Assisting in the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2), for which she faces a maximum term of imprisonment of three years for each count, which may run consecutively or concurrently. *See* 26 U.S.C. § 7206(2). If a term of imprisonment is imposed, the Court may also impose a term of

6

supervised release of up to one year per count, 18 U.S.C. § 3583(b)(3), where multiple terms must run concurrently, *id.* § 3624(e). Because the offense is a Class E felony, Defendant may also be sentenced to a term of probation of not less than one nor more than five years, *see id.* § 3561(c)(1), with one of the following conditions unless extraordinary circumstances exist: a fine, restitution, or community service, *see id.* § 3563(a)(2). Defendant also faces a maximum fine of $250,000.00 per count, *see* 18 U.S.C. § 3571(b), and payment of the mandatory special assessment of $100.00 per count (totaling $2,100.00), *see* 18 U.S.C. § 3013. Pursuant to *United States v. Bok*, 156 F.3d 157 (2d Cir. 1998), Defendant may be required to pay restitution as a condition of supervised release, in the amount of taxes owed to the IRS for the counts of conviction, which amounts to $31,188.00.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2T1.4 applies to violations of 26 U.S.C. § 7206(2) and, per Guidelines § 2T1.4(a)(1) and 2T1.4, sets a base offense level of 16. *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2T1.4(a)(1), 2T4.1 (Nov. 2016) ("USSG" or "Guidelines"). Because Defendant committed the instant offense while employed as a tax preparer, the offense level is increased by two levels. *Id.* § 2T1.4(b)(1)(B). Because Defendant has no criminal history, *see* PSR ¶¶ 39–44, she has a criminal history score of zero and a criminal history category of one, *see* USSG ch. 5, pt. A. Given a total offense level of 18 and a criminal history category of one, the Guidelines suggest a term of imprisonment of between 27 and 33 months.

7

USSG ch. 5, pt. A. Defendant may also be sentenced to: a term of supervised release of one year per count, *id.* § 5D1.2(a)(3); a fine of between $6,000.00 and $60,000.00 per count, *id.* § 5E1.2(c)(3), (h)(1); payment of the costs of prosecution, *id.* § 5E1.5; and restitution, *id.* § 5E1.1. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Guidelines Introductory Commentary to Chapter 2, Part T, which pertains to offenses involving taxation, explains that criminal tax laws are designed to protect the public interest in preserving the integrity of the tax system. USSG ch. 2, pt. T, intro. cmt. It further explains the Government has limited resources with which to prosecute violations, particularly relative to the estimated incidence of violations. *Id.* Public deterrence is thus an especially important consideration when imposing sentence in cases like the instant case. *See id.*

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Several courts in this District have imposed within-Guidelines sentences for similar crimes. *See, e.g., United States v. Campbell*, 142 F. Supp. 3d 298 (E.D.N.Y. 2015) (Glasser, J.) (sentencing defendant convicted of 19 counts of fraudulent tax-related conduct, resulting in a loss of approximately $232,473.00, to 24 months in prison and one year of supervised release and ordering restitution); Judgment, *United States v. Cadet*, 08-CR-0458 (E.D.N.Y. Oct. 15, 2010) (Garaufis, J.) (sentencing defendant convicted of 16 counts of fraudulent tax-related

8

conduct, resulting in a loss of approximately $208,000, to 33 months in prison and one year of supervised release and ordering payment of restitution). In many other cases in this District, however, courts have imposed non-custodial sentences where defendants have pleaded guilty to similar crimes. *See, e.g.*, Judgment, *United States v. Baynes*, 15-CR-0139 (E.D.N.Y. June 3, 2016) (Matsumoto, J.) (sentencing defendant who pleaded guilty to one count of fraudulent tax-related conduct, resulting in a loss of approximately $86,112.43, to no term of imprisonment, four years of probation, and payment of restitution); Judgment, *United States v. Narine*, 15-CR-0158 (E.D.N.Y. Nov. 2, 2015) (Mauskopf, J.) (sentencing defendant who pleaded guilty to one count of fraudulent tax-related conduct, resulting in a loss of approximately $145,994.00, to no term of imprisonment, three years of probation, and payment of restitution); Judgment, *United States v. Halbreich*, 14-CR-0256 (E.D.N.Y. Nov. 20, 2014) (Brodie, J.) (sentencing defendant who pleaded guilty to one count of fraudulent tax-related conduct, resulting in a tax loss of approximately $104,978.00, to no term of imprisonment, two years of probation and payment of restitution); *see also United States v. Walker*, 11-CR-0282 (E.D.N.Y. Nov. 19, 2012) (Korman, J.) (sentencing defendant who pleaded guilty to two counts of tax fraud, and whose incarceration would have been extraordinarily challenging for defendant's family, to five years of probation with 180 days of intermittent (weekends) confinement). And the Second Circuit has affirmed downward departures where a Guidelines sentence would impose extraordinary hardship on a defendant's family, and particularly in cases where defendants are "solely responsible for the upbringing of . . . children." *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992); *see also, e.g., United States v. Galante*, 111 F.3d 1029 (2d Cir. 1997) (similar); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (affirming downward departure where defendant's

9

imprisonment would harm adult relatives needing special care and might result in destruction of family unit).

For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As discussed relative to the third and fourth factors, the Court may order restitution in the amount of $31,188.00.

### CONCLUSION

A sentence of 24 months of incarceration, one year of supervised release with special conditions that include payment of restitution in the amount of $31,188.00, and payment of a $2,100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum to the Presentence Investigation Report and imposes all of the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ II
UNITED STATES DISTRICT JUDGE

Dated: April 28, 2017
       Brooklyn, New York

10